

# THE ATTORNEY GENERAL

# OF TEXAS

Grover Sellers
XXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

(Overruled by O-6903 insofar
as conflicts)

Hon. C. H. McDowell
Acting Director
Texas Agricultural
Experiment Station
College Station, Texas

Opinion No. O-6017
Re: Authority of Board of Directors
of A.& M. College to purchase addi-
tional land for Main State Experi-
ment Station.

Dear Sir:

We acknowledge receipt of your letter of May 12, 1944,
requesting an opinion from this department on the legality of a
proposed purchase of two tracts of land, consisting of 215 and
219 acres, respectively, in Burleson County, Texas, by the Board
of Directors of A.&M. College for use for experimental purposes
by the Main State Experiment Station in Brazos County, Texas.
You have also submitted to us abstracts covering these two tracts
of land for our examination, but in view of our conclusion with
reference to the authority of the Board of Directors to make this
purchase, we find it unnecessary to examine the abstracts.

In our recent opinion No. O-5918 we held: (1) That the
Board of Directors of A.&M. College had statutory authority under
Articles 2613a and 2613a-5, Vernon's Annotated Civil Statutes to
purchase land "conveniently located in reference to the campus"
for "college purposes" and (2) that the 48th Legislature had ap-
propriated the unexpended balance in the Pure Feed Fund "for such
purposes as the Board of Directors of the Agricultural and Mech-
anical College of Texas may deem advisable." On the basis of
these holdings we were of the opinion on the facts stated that
the Board of Directors of A.&M. College was authorized to pur-
chase the Seth Mooring and the John Lawrence farm as a part of
the physical plant of A.&M. College and pay for the land out of
the available balance in the Pure Feed Fund.

Your letter states the purpose for which the proposed
purchase is to be made is "for research on feeds and grains for
poultry and livestock." The purposes for which the Board of Di-
rectors purchased the Seth Mooring and John Lawrence farm were
stated to be:

"1. To afford additional space and a better type of
soil for research and kindred work on feeds and grains for
poultry and livestock and in all other phases of agriculture
for the Agricultural Experiment Station and for research
projects for graduate students in agriculture.

"II. To provide for expansions in the production and processing of livestock, poultry, dairy, farm crops, and horticultural products in order that the College may better accomplish to a greater degree the following objectives:

"A. Afford more practical training for students in all phases of agricultural research, production and management.

"B. Enlarge certain processing facilities so as to give students training in the commercial operations of such plants.

"C. Furnish a large portion of animal, dairy and horticultural products used in the mess halls.

"D. Produce a larger portion of the feeds required for livestock and poultry kept by the Experiment Station and School of Agriculture."

Section 44 of Article III of the Texas Constitution provides that:

"The Legislature . . . shall not . . . grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law."

The question here is not whether the money is available for the purchase of this land, but whether any pre-existing law authorized the purchase of this land by the Board of Directors of A.&M. College at the time the 48th Legislature passed the current appropriation bill. If there was no such pre-existing law authorizing the purchase the appropriation bill cannot be construed as conferring this authority. Fort Worth Cavalry Club, Inc. v. Sheppard,125 Tex. 339, 83 S.W.(2) 660.

Chapter 8 of Title 4 of the Revised Civil Statutes of Texas, 1925, and the amendments thereto are devoted exclusively to State Experiment Stations, their establishment, maintenance, and operation. The powers of the Board of Directors of A.&M. College with reference thereto are separately enumerated. The Board is given power to lease land for experimental purposes, but its only power to buy land is limited to those instances where the Board of Directors has sold land which has "become undesirable for experimental purposes" and deems it advisable "to apply the proceeds of such sale in the purchase of other land." Article 139, V.A.C.S. There is no general authority in this law to purchase land for experimental purposes comparable to the authority conferred by Article 2613a and 2613a-5, Vernon's Annotated Civil Statutes to purchase land for college purposes.

Hon. C. H. McDowell, page 3 (O-6017)

From time to time the Legislature has passed amendments to Chapter 8 of Title 4 authorizing the establishment of sub-experimental stations in different parts of the State but these laws have always provided that these stations were to be located on land donated by citizens of the community which would be benefited by the establishment of the sub-station. Of course, if the Board of Directors has authority to purchase additonal land for the Main State Experiment Station, it would likewise have authority to purchase additional land for the numerous sub-stations located throughout the State, that is at least as long as there was money available in the Pure Feed Fund. We are of the opinion that the statutes which we relied upon as a basis for out Opinion No. O-5918 should be limited to the purchase of land for college purposes.

We, accordingly, advise that, in our opinion, the proposed purchase of the two tracts of land in Burleson County is not authorized by pre-existing law and the Pure Feed Fund cannot be used for this purpose.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Fagan Dickson
Fagan Dickson, Assistant

APPROVED MAY 7, 1944
/s/ Grover Sellers
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:      OS, CHAIRMAN

FD:BT:wb